**MODERN BOOKKEEPING, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 94–40048.

United States District Court, E.D. Michigan, Southern Division.

May 12, 1994.

---

Robert E. Miller, Edith Thomas, Detroit, MI, Richard Daguano, Farm Hills, MI, for plaintiffs.

John Lindquist, Washington, DC, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDMUNDS, District Judge.

This cause came before the court on Plaintiffs' complaint, which sought review of an October 18, 1993 jeopardy assessment and levy, pursuant to 26 U.S.C. § 7429, against 25 corporations owned by Harry V. Mohney. Plaintiffs and the government presented testimony before the court on March 16 and 17, 1994, after which the parties were granted leave to file post-hearing memoranda. On April 4, 1994, the government filed its memorandum. Plaintiffs filed their memorandum April 5, 1994, and filed a response to the government's memorandum April 6, 1994. For the reasons stated below, the jeopardy assessment shall be abated.

### I. Facts

In 1989, Harry V. Mohney was convicted of, and sentenced for, filing false tax returns concerning his and International Amusements, Ltd.'s 1981–83 tax returns. Mohney is presently serving a three-year sentence at the federal prison camp at Baron, California.

On October 18, 1993, the Internal Revenue Service levied a jeopardy assessment, pursuant to 26 U.S.C. § 6861, against the 25 corporate entities named as plaintiffs. Under authority of the assessment, the IRS entered Plaintiffs' premises; seized cash and cash equivalents; levied personal bank accounts, corporate operating accounts and payroll accounts; and placed federal liens on some 45 parcels of property across the country.

### II. Applicable Law

If the IRS determines that collection of a tax liability would be jeopardized by delay, it may make an immediate assessment. 26 U.S.C. § 6861. Pursuant to section 301.-6861–1 of the Treasury Regulations, the IRS may make an assessment under section 6861, using the criteria set out in section 1.6851–1(a) of the Treasury Regulations. The three criteria are as follows: (i) the taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself; (ii) the taxpayer is or appears to be designing quickly to place his, her, or its property beyond reach of the government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it; or (iii) the taxpayer's financial solvency is or appears to be imperilled. Treas.Reg. § 1.6851–1(a). The IRS may make a jeopardy assessment if it finds any one of these three criteria to exist. Treas. Reg. § 301.6861–1.

■ An assessment under section 6861 is "an extraordinary measure, intended for exigent circumstances (hence the name 'jeopardy assessment')." *Penner v. United States,* 582 F.Supp. 432, 434 (S.D.Fla.1984).

■ After such an assessment, the taxpayer may seek judicial review of the action in United States District Court. 26 U.S.C. § 7429. The review under Section 7429 was made available in recognition of the extraordinary nature of assessments under section 6861. *Penner*, 582 F.Supp. at 434.

■ In a proceeding brought under section 7429, the question of ultimate tax liability is not at issue; rather, the issue is whether the assessment was reasonable. First, the court must determine whether the IRS was reasonable in making the assessment by deciding whether the agency satisfied any one of the three criteria set forth in section 6861. The defendant has the burden of proof on this issue. 26 U.S.C. § 7429(g)(1).

The second question is whether the amount of the assessment, in this case about $14.5 million, was reasonable. The plaintiff bears the burden of proving that the amount was unreasonable. 26 U.S.C. § 7429(g)(2). Pursuant to section 7429(f), the determination of the court is final and conclusive; and it is not subject to review by any other court. *United States v. Vicknair*, 617 F.2d 1129, 1131 (5th Cir.1980).

### III. Evidence Presented

#### A. *Government's Evidence*

The government bears the burden of proving that the jeopardy assessment was reasonable. To do so in this case, it relied upon the second of the three criteria set forth in section 1.6851–1(a) of the Treasury Regulations.[1]

In its post-hearing brief the government stated,

> In this case, the Commissioner reasonably concluded that collection against the subject plaintiff corporations is in jeopardy because Mr. Mohney will use his control of the corporate empire to continue to shift corporate assets either outside of the United States, into hidden liquid assets (such

as precious metals), and/or into new generations of nominee domestic corporations.

Government's post-hearing br. at 4. Three witnesses testified on behalf of the government: Bernice Petzold, an IRS agent; John Roney, an IRS revenue officer; and Kathie Henderson, an IRS revenue officer.

The government focused on the background of Harry Mohney, his alleged intent, his alleged continuing concealment of corporate assets, his alleged distribution of funds to off-shore entities and the current status of collection efforts. First, the government recounted Mohney's convictions for filing false federal income tax returns and aiding and abetting the filing of false returns. Though the IRS conceded that evidence of a mere propensity to evade collection may be, by itself, insufficient to justify a jeopardy assessment, the IRS contended that such evidence, viewed in combination with other evidence gathered by the agency, leads to the conclusion that the assessment was reasonable under the circumstances. Government's br. at 6.

Second, the IRS asserted that Mohney's intent is critical to the determination of whether the assessment was reasonable. The IRS alleged that Mohney continues to place the assets of his corporate empire beyond the government's reach even though Mohney is presently incarcerated. *Id.* The government introduced evidence to show that one of Mohney's on-site business managers admitted to minimizing cash-on-hand in anticipation of a possible levy, and that Mohney was resisting the assessment of off-shore withholding taxes by refusing to sign or authorize the signature of certain IRS forms.

Third, the government introduced evidence regarding Mohney's alleged continuing concealment of assets, in that some corporate returns disclosed ownership by foreign corporations, which were, in turn, owned by other foreign corporations.

---

1. The taxpayers are not or appear not to be designing quickly to depart from the United States nor to conceal themselves, as the taxpayers at issue are corporate entities. Furthermore, Harry Mohney, who controls the plaintiff corporations, is presently incarcerated in a federal prison camp. The taxpayers' financial solvency is not nor appears not to be imperilled, as they have collectively paid a total of over six million dollars in federal income taxes over the last three years.

Petzold also testified that one of Mohney's corporations had distributed payments to Mohney in the form of precious metals. Petzold had determined that Imagination Corporation accumulated gold and silver as a purchasing agent for Eyefull Corporation and Jolar of San Diego and had distributed a total of $2.7 million to Mohney in the form of gold and silver as bonuses, management fees or dividends. The government conceded, however, that Mohney declared the distributions as gross income on his personal tax return and paid taxes on that income.

Also, with respect to the alleged concealment, revenue officers Roney and Henderson testified that they "believe that Mohney is transferring corporate assets from his corporate empire to a new generation of alter ego corporations in the name of the 'Mirano Group,'" owned by George Mironovich, a friend and business associate of Mohney's. Government br. at 9. The government submitted that four Mohney companies, out of a total of over 100 Mohney entities, were transferred to Mironovich in 1993. Revenue officers testified that one of the four, Variety News & Distributing, was sold to Platinum Paradise, Inc., a Mironovich entity, for $800,000, and that the down payment of $25,000 was borrowed from Variety News. In connection with the sale, Platinum Paradise also agreed to a $500,000 covenant not to compete, payable out of profits back to Variety News.

Government witnesses further testified that Mohney purchased a condominium from Mironovich in 1989, although county records show that the title is still held in Mironovich's name, and Mironovich's daughter allegedly occupied that property from 1991 through 1993. Also, the condominium fees during that time were paid by Modern Bookkeeping, one of the plaintiff corporations in the instant case.

The government contended that the transfers of assets from Mohney controlled corporations to the Mirano group were suspect "given the relationship between the parties, the fact that the consideration actually paid appears to be grossly inadequate, and Mr. Mohney has retained an interest in the business." Government br. at 12. The government concluded, "These facts indicate not only that the sale is not *bona fide*, but collection is in jeopardy because corporate assets are being transferred away to create a new generation of nominee corporations." *Id.*

Fourth, the government provided evidence that the plaintiff corporations transact business with off-shore corporations, are owned by foreign corporations and use an off-shore insurance company, which Agent Petzold believes to be merely a bank account rather than a legitimate insurance company. The government asserted that approximately $2 million should have been withheld from the payments to the off-shore companies, a tax procedure that Plaintiffs dispute. Corporate returns were prepared and submitted by the subject corporations, despite the disagreement over the tax liability. The government argued that the submission of the returns is meaningless because they were unsigned and unaccompanied by payment.

Finally, the government argued that collection is in jeopardy because of the current status of collection efforts. After the IRS made the jeopardy assessment, it seized $3.4 million in cash and filed notices of tax liens on real property with a forced sale value of $3 million to $4 million. Officer Roney testified that many of the taxpayers' properties have clouded title, which would reduce the sales value of the property. Moreover, Roney testified that the government would have no interest in seizing the operating assets of these corporations because it is against IRS policy to seize and sell pornographic materials. For the same reason, the government assigned a net value of $0.00 to the going concern value of the businesses, despite the uncontroverted evidence that the businesses are extremely lucrative and have generated substantial tax payments to the IRS over the last three years.

### B. *Plaintiffs' Evidence*

David Shindel, an accountant retained by Mohney, and Norman Nelson, a former IRS official, testified on behalf of Plaintiffs. It is undisputed that Plaintiffs lawfully conduct business in the adult entertainment industry. Each has a legitimate business purpose, keeps separate books and records, maintains

separate bank accounts, regularly files income tax returns, reports substantial income, regularly pays taxes and creditors and does not commingle corporate or personal assets. In fact, the IRS recognizes each plaintiff as a separate taxable entity.

Plaintiffs presented evidence to show that they have substantial assets, income in excess of $14 million in the past three years, and going concern value, all of which is more than sufficient to pay any ultimate tax liability. Plaintiffs own substantial parcels of real property situated in the United States, as evidenced by the 45 parcels upon which liens were levied by the IRS pursuant to its jeopardy assessment.

The government was unable to produce any evidence that either the plaintiff corporations or Mohney was placing assets beyond the reach of the IRS, thereby placing the government in jeopardy concerning collection. In fact, according to IRS officer Roney, neither Mohney nor the plaintiff corporations owed any delinquent taxes for any of the years prior to the October 18, 1993 jeopardy assessment. Moreover, the government conceded that these corporations have paid in excess of $6 million during the three audit years. IRS agent Petzold also conceded that beginning in 1990 Mohney directed his corporations to cooperate fully during her extensive, two-year audit of those entities.

Former IRS agent Nelson testified that use of an offshore fire and casualty company is a commonly recognized, lawful business practice; and the government did not respond with any evidence that Mohney is directing assets to offshore companies in order to escape tax liability.

Finally, Plaintiffs presented evidence that once their tax liabilities have been determined, they have regularly paid the amount due. In fact, since the hearing date Plaintiffs have paid approximately $410,000 toward the disputed tax liability.

## IV. Analysis

■ Although Mohney was convicted of filing false returns and has openly expressed disdain for the IRS, agent Petzold testified that Mohney's employees, particularly accountant Shindel, were very cooperative during her lengthy, on-site audit. Petzold further testified that Shindel and other Mohney employees obtained for her and gave her all the records she requested.

Revenue officer Roney recounted that another IRS official told him that the manager of DeJa Vu, Inc. of San Diego had gotten a phone call telling the manager of the impending IRS seizure of assets. Notwithstanding the advance warning, the IRS procured $19,000 from that corporation on the day it finally acted on the assessment.

The government also complained that the Forms 1042 regarding off-shore withholding taxes were unsigned by Mohney and his subordinates. However, the corporations have *filed* the forms with the IRS; and the failure to sign them appears to be merely a jurisdictional dispute within the Mohney organization. Moreover, the tax liability for off-shore withholding taxes is disputed by the taxpayers and remains, as yet, unresolved. Therefore, Plaintiffs' failure to sign these forms or to pay the taxes thus far does not indicate that collection is in jeopardy.

The government has also unreasonably relied on Mohney's receipt of corporate distributions in the form of precious metals. Although such a transaction may be unusual, it is not unlawful. More importantly, the IRS conceded that Mohney declared the distributions as income and paid taxes on them. The fact that the IRS, as well as Mohney's accountant, does not know the whereabouts of the gold and silver is irrelevant to the issue of collection of taxes and even more remote as to the issue of whether collection is in jeopardy in this case.

Although, undercapitalized transfers of corporate assets to a new generation of alter ego corporations may indicate that the transfers are being made for tax purposes, in the instant case, the government offered evidence to show only that four of over 100 companies owned by Mohney have been sold. Furthermore, the IRS offered the particulars of only one sale, that of Variety News & Distributing. No pattern exists to indicate that tax collection is in jeopardy.

**480**

Evidence presented by the government that a Mohney corporation pays condominium fees for a residence occupied by Mironovich's daughter in Las Vegas, as well as testimony that the title is yet in Mironovich's name despite a previous sale to Mohney, is irrelevant to a determination of whether collection of taxes for these 25 plaintiff corporations is in jeopardy. Nor does Plaintiffs' use of an off-shore insurance company, a common business practice, support the government's use of this assessment procedure. The government has failed to carry its burden of proving that the jeopardy assessment levied against Plaintiffs was reasonable. In light of all of the evidence presented at the hearing, it appears that collection of taxes, which have yet to be determined by the United States Tax Court, is not in jeopardy. Because the court finds that the assessment was not reasonable, it need not reach the issue of whether the amount of the assessment was reasonable.

Plaintiffs have also requested costs and attorneys' fees in pursuing this action against the IRS. The court denies their request.

## V. Conclusion

In accordance with these findings of fact and conclusions of law, it is hereby **ORDERED** that the jeopardy assessment levied against plaintiff corporation is **ABATED.** It is further **ORDERED** that the United States **RETURN** to Plaintiffs all funds and property seized pursuant to the assessment. It is further **ORDERED** that the United States **RELEASE** all federal liens imposed pursuant to the assessment.